## Appeals of M. E. GETTYS and C. C. HUMPHRIES.

Docket Nos. 3495 and 3511.　Submitted November 5, 1925.　Decided January 26, 1926.

> The evidence submitted does not warrant a modification of the determination of the Commissioner that certain promissory notes received as part payment upon the sale of property were the equivalent of cash for the purpose of computing gain or loss.

*Frank Reagan, Esq.*, for the taxpayers.
*George G. Witter, Esq.*, for the Commissioner.

### Before PHILLIPS and TRAMMELL.

which the partnership had taken in its return. The two appeals were consolidated at the time of the hearing.

There is no dispute between the Commissioner and the taxpayer with respect to the purchase price of the property sold and the selling price, the only question being whether the profit arising from the sale thereof should be reported in taxable income for the year in which the sale was made, or in the years in which deferred payments were made.

### FINDINGS OF FACT.

The Gettys Lumber Co. was a partnership, having its place of business at Jeffersonville, Ga. The members of the partnership in 1919 were M. E. Gettys, W. B. Gettys, W. M. Whitaker and C. C. Humphries. The partnership operated a sawmill and general lumber business, and also carried on farming operations.

On July 26, 1919, the Gettys Lumber Co. sold to the Whitaker Lumber Co., a partnership, a large portion of its assets, consisting of its plant, machinery, equipment, houses, mules and horses, lumber in the yards and in the woods, and stumpage, a part of the latter being in the form of leases on timber lands owned by others. The price paid for the property was $286,000, of which $160,000 was paid in 1919, $100,000 in 1920, and $26,000 in 1921. The net profit arising from the sale was $56,371.60.

The sale was consummated by five written instruments: (1) A deed from the Gettys Lumber Co. to the Whitaker Lumber Co., conveying all of the property involved, except certain lumber, together with the business and good will, the consideration for this deed being stated at $126,000. (2) A contract or bill of sale by which the Gettys Lumber Co. sold to the Whitaker Lumber Co. the cut lumber and dressed lumber not conveyed in the above deed. This contract provided that the Whitaker Lumber Co. should have five years from the date of the contract within which to cut and remove the timber on lands owned by the Gettys Lumber Co., with the privilege of renewal for a term of five years longer upon the payment of certain specified sums for each separate contract. This contract recited that the deferred purchase price for the lumber therein described was $114,085.32, and a cash payment of $45,914.68 was made on the delivery of the contract. (3) Three promissory notes given in payment, two for $50,000 each, due June 1, 1920, and December 1, 1920, and one for $26,000, due June 1, 1921, all of said notes being payable to the Gettys Lumber Co. and signed by T. B. Lovelace, W. M. Whitaker, and H. M. Johnson, who constituted the partnership of Whitaker Lumber Co. The notes bore interest from date at the rate of 6 per cent per annum, waived the makers' rights of homestead, and agreed that, in the event the notes were placed in the hands of attor-

neys for collection, a 10 per cent attorneys' fee would be added thereto. Title to the property was not retained. There was no mortgage or other security given in the transaction. The contract provided that the payment for the lumber sold under the contract should be made " as it [the lumber] is worked out and shipped, as much at least as $20 per thousand feet, or more if they desire so to do." The Whitaker Lumber Co. agreed to fill all the orders of the Gettys Lumber Co. which were on hand at the time of the sale.

The Gettys Lumber Co. in its 1919 partnership return claimed a deduction on account of bad debts in the amount of $12,550. The debt arose on account of sales of merchandise and supplies by the partnership to farm hands and croppers, who were employed on the farm of the partnership. In the fall of the year, after the crops were gathered, the partnership would have a settlement with its croppers—that is, tenant farmers who farmed the lands on a division of crops basis—and farm hands, and, if they did not have a sufficient amount owing to them to pay the bills for merchandise and supplies, the partnership charged off the difference as bad debts. The farm hands and croppers had no money and in 1919 the partnership was no longer in business and was unable to carry the accounts over in the hope of balancing the same the next year. Securing judgment against the debtors would have been a useless procedure, as they had no money or property. The debts were ascertained to be worthless and were charged off the books during 1919.

## DECISION.

The deficiencies should be computed in accordance with the following opinion. Final determination will be settled on 10 days' notice, in accordance with Rule 50.

## OPINION.

TRAMMELL: With respect to the profit on the sale of the assets referred to in the findings of fact, the only question is whether the partnership received cash, or the equivalent of cash, as the consideration for the property. The notes, amounting to $126,000, were unsecured. A member of the partnership undertook to discount them at a bank in the community in which the business was located, but the bank was unable to handle the notes because the amounts thereof were too large in comparison with its capital and it could not lend money or handle notes beyond a certain percentage of its capital stock. The notes may not have been secured by mortgage or lien against any specific property, but this is not conclusive as to whether they had a fair market value when received. The testimony of a banker that his bank was not in a position to handle notes of

the character of the notes involved is not sufficient to establish the fact that the notes had no fair market value. It is not so much a question of when the notes were payable or when they were paid. The real question is whether they had a fair market value. If they did, the partnership received income to the extent of the cash received and·their fair market value. We are unable to find as a fact that the notes received did not have a fair market value at the time received. This being true, we must approve the determination of the Commissioner with respect to the gain arising from the sale of the assets.

With respect to the debts claimed by the partnership to have been worthless and charged off during 1919, we have found as a fact that the debts were in fact ascertained to be worthless and charged off during that year.